IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, and
STATE OF NEW MEXICO, *ex rel.*

SALLY HANSEN, Relator,

       Plaintiffs,

v.                                                     CV 11-0566 WPL/CG

DEMING HOSPITAL CORPORATION
d/b/a MIMBRES MEMORIAL HOSPITAL,
COMMUNITY HEALTH SYSTEMS, INC.,
COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORPORATION,
and JERRY BOSSELL,

       Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING RULE 59(e) MOTION FOR RECONSIDERATION AND
DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Sally Hansen has filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e) (Doc. 89) and a motion for leave to file a second amended complaint (Doc. 90). For the reasons set forth below, I deny both motions.

**MOTION FOR RECONSIDERATION**

Hansen seeks reconsideration of my Order filed on November 21, 2013, in which I granted Defendants' motion to dismiss her False Claims Act ("FCA") claims relating to allegations of Clinical Laboratory Improvement Amendments ("CLIA") violations. (*See* Doc. 87.) A motion for reconsideration under Rule 59(e), also known in this context as a motion to alter or amend the judgment, "is appropriate where the court has misapprehended the facts, a

party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citation omitted). By contrast, a motion under Rule 59(e) that relitigates the same issues, presents new theories, introduces previously available evidence that was not proferred, or reargues the merits is not appropriate. *See id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)); *see also Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994). The decision to grant or deny a motion under Rule 59(e) is left to the sound discretion of the trial court. *See Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009). For the reasons described herein, Hansen has failed to meet her burden to show that reconsideration of my earlier Order is appropriate.

## I.     Newly Available Evidence

Hansen cites to two "newly available facts" to argue that reconsideration is appropriate. First, she points to a letter in which the New Mexico Human Services Department states that "substantial evidence" exists to support her claim that Defendants violated the state's Medicaid False Claims Act, N.M. STAT ANN. § 27-14-1 *et seq.* (*See* Doc. 89 at 3, 9; *see also* Doc. 78 Ex. 1.) In fact, I granted Hansen permission to file the letter as an exhibit to her response to Defendants' motion to dismiss (Doc. 79), and I expressly acknowledged the existence of that letter in my Order (Doc. 87 at 5 n.4).[1] Therefore, this letter does not constitute newly available evidence and cannot serve as the basis for a motion to reconsider.

Second, Hansen says that she recently learned that "the State of New Mexico is seeking to recover prior Medicaid payments of $296,567.36 for improper billing based on the CLIA

---

[1] Moreover, as I observed in my Order, the letter has no bearing on Hansen's federal law claims. (*See* Doc. 87 at 5 n.4.)

violations it found after investigating Relator's claims." (Doc. 89 at 3.) Hansen does not state the authority under which the state is seeking such payments, and while Hansen alleges that the state is pursuing recovery on the basis of "improper billing based on . . . CLIA violations," she does not assert that the state is seeking such recovery on grounds that the billing in question was considered fraudulent. As such, Hansen's allegation does not rebut my observation that she has failed to point to caselaw or regulations showing that "the government normally seeks retroactive recovery of Medicare payments for services actually performed on the basis that the noncompliance rendered them fraudulent." (*See* Doc. 87 at 15 (quoting *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1221 (10th Cir. 2008)).) Nor does this new allegation override the other bases for determining that CLIA regulations are conditions of participation rather than conditions of payment. (*See id.* at 14-20.)

## II.     Misapprehension of Facts and Law

Next, Hansen argues that my Order misapprehends the facts and misapplies the law with respect to several of her theories of liability. Hansen only seeks reconsideration of my rulings on her implied false certification and fraudulent inducement theories of FCA liability, her retaliation claim, and her request for leave to amend. (*See* Doc. 89 at 9-23.)[2] I consider these rulings in turn.

### A.   Implied False Certification

In discussing my ruling regarding her FCA claims under the implied false certification theory, Hansen begins by asserting that my ruling effectively prevents any finding of FCA liability "for violations of any statute or regulation that grants the government the authority to suspend payments or expel someone from a government program, but happens to also grant it the

---

[2] Although it is unclear whether Hansen seeks reconsideration of her express false certification theory of liability, Hansen does not dispute that she failed to allege that Defendants expressly certified compliance with any statutes, regulations, or contractual terms. (*See* Doc. 87 at 20-22.) Accordingly, she has failed to show that I misapprehended the facts or controlling law on that issue.

opportunity to choose some penalty short of expulsion from the government program." (Doc. 89 at 12-13.) Such a ruling, Hansen contends, is contrary to both the FCA's purpose and Tenth Circuit caselaw. (*Id.* at 13-14.)[3]

Hansen's argument misconstrues my decision. My ruling that Hansen's implied false certification argument could not succeed is not based merely on the conclusion that CLIA regulations grant the government discretion in choosing enforcement procedures. Rather, this ruling is premised on the conclusion, stemming from a comprehensive review of CLIA's enforcement regulations, that CLIA compliance is a condition of participation in Medicare rather than a condition of payment. (*See* Doc. 87 at 11-20.) It is true that the government's discretion with respect to the means for enforcing CLIA compliance is one of several factors undergirding this holding (*see id.* at 14-16), particularly since conditions of participation are defined as those that "are enforced through administrative mechanisms, [where] the ultimate sanction for violation of such conditions is removal from the government program," *see Conner*, 543 F.3d at 1220. Equally important, however, is the fact that of the many enforcement tools available to the government, none call for the refusal of payment on claims for procedures actually performed despite existing CLIA violations, and none call for the recovery of payments on such claims. (*See* Doc. 87 at 18.) "Rather, the regulations only contemplate the cancellation of Medicare

---

[3] These passages seem to be primarily focused on my analysis of Hansen's promissory fraud theory of liability; at no point is my discussion of her implied false certification theory expressly mentioned on these pages. (*See, e.g.*, Doc. 89 at 12-14.) On the other hand, none of the binding caselaw that Hansen cites here bears directly on her promissory fraud theory of liability, and indeed most of it is expressly concerned with false certification claims. *See, e.g.*, *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167-71 (10th Cir. 2010); *Conner*, 543 F.3d at 1217-23; *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 531-33 (10th Cir. 2000). Further, Hansen argues that my decision would impact FCA liability "under a [promissory fraud] theory, *or any other theory*," (Doc. 89 at 12 (emphasis added)), and at one point she indirectly cites to my discussion of her implied false certification theory (*see id.* at 14 (citing, *e.g.*, Doc. 87 at 16-17)). Because these passages may be construed as challenging my decision with respect to Hansen's implied false certification claim, I will address them in that context out of an abundance of caution.

payments for future claims." (*See id.* (citations omitted).) As such, there is no indication that CLIA compliance is a condition of payment—that the government, if it were aware of CLIA violations, would "actually refuse payment" on claims for services that have been performed—and therefore there is no basis for an implied false certification claim. *See Conner*, 543 F.3d at 1220.

Hansen also takes issue (*see* Doc. 89 at 14) with my concerns that the government's enforcement discretion would be "severely undermined," and that courts would be forced into "the position of regulatory inspectors," if full CLIA compliance were deemed a condition of Medicare payment (Doc. 87 at 16-17). This portion of my Order cites directly to *Conner*, where the Tenth Circuit expressed the same concerns regarding the possible interference with governmental regulatory enforcement and the burden on the courts that such a ruling would create. *See Conner*, 543 F.3d at 1221 (quoting, *e.g.*, *Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001)). Despite her extensive citations to purportedly analogous regulations and caselaw from outside this circuit, Hansen does not acknowledge that the Tenth Circuit expressed these concerns in *Conner* (*see* Doc. 89 at 14-18; Doc. 93 at 10), and she does not explain how *Conner*'s logic with respect to these particular matters does not apply here.[4]

Elsewhere in her motion, Hansen does assert that the regulations and violations at issue here are distinguishable from those at issue in *Conner*. (*See* Doc. 89 at 3-4.) This portion of her motion constitutes an attempt to rehash arguments that have previously been litigated. (*See, e.g.*, Doc. 69 at 24-25; Doc. 87 at 17-19.) Consequently, this argument is not appropriately raised in a motion to reconsider under Rule 59(e). *See Servants of Paraclete*, 204 F.3d at 1012 (citation

---

[4] Further, Hansen's insistence that the government's failure to seek dismissal of this case "implicitly" shows that *Conner*'s concerns are not present here (*see* Doc. 89 at 18; Doc. 93 at 4) is as insubstantial as Defendants' earlier insinuation that the government's failure to intervene in her lawsuit shows that the case is without merit (*see* Doc. 63 at 4, 19). Whatever the motives of the United States in this case, they are irrelevant to the legal questions that this action raises.

omitted); *Voelkel*, 846 F. Supp. at 1483 ("A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed.").

  B. Promissory Fraud

  In my discussion of Hansen's promissory fraud theory of liability, I analyzed the framework for CLIA certification renewal (*see* Doc. 87 at 28-30) and concluded that this administrative mechanism "differs very little from the overall CLIA enforcement provisions that foreclose Hansen's false certification claims" (*id.* at 30). As with the enforcement provisions, the relevant statutes and regulations on certification renewal "afford the government . . . significant discretion as to how they approach [condition level] deficiencies"; limitations and denials of renewal are discretionary, subject to hearings and written appellate review; suspension of Medicare payments, which is triggered by a denial of certification renewal, may only follow notice to the applicant and an opportunity to respond; cancellation of approval for Medicare payments only occurs if deficiencies are not corrected within twelve months; and complete removal from Medicare only occurs if the applicant is not in "substantial compliance." (*See id.* at 29.) Accordingly, this detailed administrative mechanism that culminates in the termination of Medicare participation indicates that CLIA compliance constitutes a condition of participation and does not rise to the level of a condition of payment. (*See id.* at 30.) As violations of a condition of participation alone are not considered "material" for FCA purposes, *see Conner*, 543 F.3d at 1220, Hansen could not proceed with her claim under the promissory fraud theory of liability (*see* Doc. 87 at 32-33).

  As noted earlier, Hansen argues that this line of reasoning is erroneous in that it prevents any finding of liability when a regulatory scheme provides the government with the discretion to choose between several means of enforcement. (Doc. 89 at 12-14.) Hansen also argues that my

concerns regarding a broad construction of FCA liability are in contravention of "ample" caselaw from outside the Tenth Circuit (*id.* at 14-18), despite the fact that these concerns derive directly from *Conner* (*see* Doc. 87 at 16-17, 30). For the reasons mentioned in my discussion above regarding the implied false certification theory, these arguments do not demonstrate that I misapprehended controlling law with respect to the promissory fraud theory of liability and do not serve as a basis for reconsideration under Rule 59(e).

Hansen also asserts that I failed to consider her factual allegations regarding Defendants' fraudulent conduct in the context of my promissory fraud analysis, reaching this conclusion in part because I did not discuss these allegations at length in this analysis. (*See* Doc. 89 at 11-12.) This assertion is belied by both the promissory fraud analysis at issue and the Order's background section. (*See* Doc. 87 at 2-4 (reviewing Hansen's investigation into "numerous" serious CLIA violations and her discovery of "a wide-ranging effort by Defendants to cover up or ignore the laboratory's deficiencies"); *id.* at 26-27.) Although Hansen also bases her conclusion on the fact that I did not expressly refer to two specific citations from Hansen's fifty-two-page first amended complaint (Doc. 89 at 11-12), these citations simply set forth triggers that may lead CMS to "initiate adverse action" as to a laboratory's CLIA certification, *see, e.g.*, 42 C.F.R. § 493.1840(a). Because my conclusion regarding Hansen's promissory fraud claim hinges on the administrative mechanism for CLIA renewal applications in the event that such triggers occur (*see* Doc. 87 at 28-30), these "factual allegations"[5] do not alter my analysis.

---

[5] The citations in question, particularly the citation to § 493.1840(a), assert that CLIA authorizes revocation or suspension of a certificate under certain conditions. (Doc. 50 at 9, 11.) Similarly, in her reply brief, Hansen points to "the specific allegations . . . that falsehoods and misrepresentations in the certification process create an independent basis . . . to revoke CLIA certification, *also establishing materiality*." (Doc. 93 at 9 (emphasis added).) Despite Hansen's framing of these passages in her first amended complaint as "factual allegations," the statements constitute legal conclusions that I am not bound to accept as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Finally, Hansen asserts that I erred in finding that her allegations failed to satisfy the materiality element of her promissory fraud FCA claim (Doc. 89 at 18-21 & n.7), relying on the same arguments that she raised in her response to Defendants' motion to dismiss (*cf.* Doc. 69 at 15-21) and that I have already rejected (*see* Doc. 87 at 30-33). As I observed earlier, a motion to reconsider under Rule 59(e) is not a place to relitigate previously considered arguments. *See Servants of Paraclete*, 204 F.3d at 1012 (citation omitted); *Voelkel*, 846 F. Supp. at 1483.

    C.  Retaliation

In my Order, I concluded that Hansen had not properly stated an FCA retaliation claim, noting that she failed to "plausibly allege sufficient notice to Defendants that she was engaged in efforts to stop fraudulent conduct that would be actionable under the FCA." (Doc. 87 at 42-43.) Hansen disputes this conclusion using largely the same arguments that she raised in her response to Defendants' motion to dismiss, insisting that it is enough that "the actions of which Relator complained did violate the FCA" and that "the Defendants were on notice of the fraud-related implications of Relator's actions." (*See* Doc. 89 at 21-23; *cf.* Doc. 69 at 28-31.) Although I rejected this line of argument in my Order and ruled that the notice element of her retaliation claim required a nexus between a relator's protected activities and her efforts to prevent fraud on the government, rather than efforts to simply cover up regulatory failures (*see* Doc. 87 at 40-43), Hansen asserts that this ruling erroneously relies on outdated caselaw from another circuit (*see* Doc. 89 at 22-23). In fact, my ruling expressly relied on evolving Tenth Circuit caselaw, citing to outside authority only for additional persuasive and explicative value. (*See* Doc. 87 at 39-42 (citing, *e.g.*, *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 704 (10th Cir. 2012); *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522-23 (10th Cir. 1996)).) By contrast, Hansen entirely fails to cite to any caselaw within this circuit (*see* Doc. 89 at 21-23; Doc. 93 at

8

11-12), and thus she has not shown that I misapplied controlling law in rejecting her FCA retaliation claim.

    D.  Leave to Amend

Hansen briefly requests reconsideration of my decision to deny her leave to amend. (Doc. 89 at 9.) In support, she argues that "leave to amend should be freely given where, as here, there is no claim of bad faith or dilatory conduct." (*Id.*) She also refers to an earlier portion of her motion in which she elaborates on the lack of bad faith or dilatory conduct. (*Id.* at 2.)

Notably, my Order consciously refused to apply the standards set forth by Rule 15(a)(2), which governs motions for leave to amend. (*See* Doc. 87 at 44.) Rather, I relied primarily on the fact that Hansen had not moved for leave to amend her complaint and had not shown either any reason to afford her such leave or any changes to her claims. (*See id.* at 44-45 (citing, *e.g.*, *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999)).) In *Calderon*, the plaintiff closed her memorandum in opposition to the defendants' motion to dismiss with a brief request for leave to amend "should the court determine the need for facts or [that] further facts be stated with [additional] particularity." *See* 181 F.3d at 1185 (internal punctuation omitted). The district court altogether failed to address this request. *See id.* at 1187. However, the Tenth Circuit found no error, reasoning that a "single sentence, lacking a statement for the grounds for amendment and dangling at the end of [the movant's] memorandum, d[oes] not rise to the level of a motion for leave to amend." *Id.*; *see also id.* at 1186 (noting that "normally a court need not grant leave to amend when a party fails to file a formal motion," with exceptions existing only when "there [is] readily apparent notice to opposing parties and to the court of both the desire to amend and the particular basis for the amendment").

As I observed in my Order, Hansen's requests were of a similar nature to that explored in *Calderon*, and as such they were not entitled to the Rule 15(a)(2) standard, particularly where Hansen failed to make any argument to justify the granting of such leave and failed to "give adequate notice . . . of the basis of the proposed amendment." *See id.* at 1186. Hansen does not contend that this reasoning and this reliance on *Calderon* constitute a misapprehension of the facts or controlling law. *See Servants of Paraclete*, 204 F.3d at 1012. Moreover, with two exceptions, Hansen does not assert that the allegations that she proposes to add via amendment (*see* Doc. 89 at 3-9; Doc. 93 at 6-8) are derived from evidence that was previously unavailable. *See Servants of Paraclete*, 204 F.3d at 1012. Finally, for the reasons discussed earlier, the allegations relating to the "substantial evidence" letter and the state's payment recovery efforts do not serve as a basis for reconsideration of my Order under Rule 59(e). Given these factors, I find no reason to reconsider my ruling on Hansen's previous request for leave to amend.

### MOTION FOR LEAVE TO AMEND

As Hansen acknowledges, a court "may not entertain motions for leave to amend unless the court first sets aside or vacates the judgment pursuant to [Rule] 59(e) or 60(b)." *See Combs v. PriceWaterhouseCoopers LLP*, 382 F.3d 1196, 1205 (10th Cir. 2004) (citation omitted). As stated above, Hansen has failed to show that reconsideration is appropriate in this case. Accordingly, Hansen's motion for leave to amend must be denied.

### CONCLUSION

For the foregoing reasons, Hansen's motion for reconsideration and her motion for leave to amend are denied.

    IT IS SO ORDERED.

                                                  *William P. Lynch*
                                                  William P. Lynch
                                                  United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.